Kenneth M. Motolenich-Salas (AZ Bar No. 027499)
kmotolenich@weissiplaw.com
Michael B. Dvoren (AZ Bar No. 027386)
mdvoren@weissiplaw.com
WEISS & MOY, P.C.
4204 N. Brown Avenue
Scottsdale, Arizona 85251
*Attorneys for Defendant
Nationwide Marketing Services, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Experian Information Solutions, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Nationwide Marketing Services, Inc., <br><br> Defendant. | No. 2:13-cv-00618-SRB <br><br> **DEFENDANT NATIONWIDE MARKETING SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)** <br><br> (Hon. Susan R. Bolton) |

Plaintiff Experian Information Solutions, Inc.'s ("Experian") response to Defendant Nationwide Marketing Services, Inc.'s ("Natimark") Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), Doc. 48 ("Response") is comprised of numerous red herrings, mischaracterizations of Natimark's arguments, and misstatements of copyright law. After cutting through all of these, this Court has ample reasons to either grant Natimark's Motion in its entirety or, alternatively, grant Natimark partial judgment on the pleadings to preclude any claim that Natimark infringed unprotectable "data" or infringed any version of the InSource Database not covered by U.S. Reg. No. TX 7-499-062 (Doc. 1-1) ("Registration").

**I.   Natimark Presented the Correct Legal Standard Which Warrants Dismissal.**

There is no dispute that Rule 12(c) motions are substantively evaluated just like Rule 12(b)(6) motions and that 12(b)(6) motions are evaluated pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Cutting through Experian's mischaracterizations and red herrings strewn over many

1

pages, the question is simply whether or not the Complaint contains sufficient factual allegations to state a plausible claim of relief for copyright infringement. It does not.

Experian attempts to re-characterize the Complaint's content to try to rehabilitate the glaring inadequacies within it. It points to the Complaint's: (i) description of "the process by which Experian created copyrightable *elements in* its database;" (ii) assertion that "Experian owns the copyright *in those protectable elements*;" (iii) contention that the "Complaint explains the rigorous process by which it selects the data to include in the database" (an apparent iteration of the "sweat of the brow" doctrine expressly rejected in *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 352-56, 359-60 (1991)); and (iv) assertion that Experian "provides facts relating to its proprietary methods and algorithms to coordinate, arrange, and categorize data." Resp. 6:3-6 and 24-28 (emphasis added) (citing to Compl. ¶¶ 15-17, 21-23, 33-34). All of this is irrelevant to the fact that after setting forth all the above in the Complaint, Experian then proceeds to allege *only* that "Natimark has taken … *data* from the InSource Database." Compl. ¶ 26. Paragraph 28 of the Complaint does not identify what Natimark allegedly "knowingly and willfully copied from the InSource Database" and Paragraphs 33-34[1] are conclusory and thus do not require this Court to assume their truth as factual allegations. Resp. 7:12-14; *Iqbal*, 556 U.S. at 678.

Even assuming, for purposes of Natimark's 12(c) Motion, that Experian selected, coordinated, and arranged the "data" within the InSource Database with sufficient originality so as to warrant copyright protection of these elements, and accepting the Registration as prima facie evidence of its validity and the veracity of "facts" stated within it, Natimark's alleged copying of the "data" itself (which are unprotectable facts) is insufficient on its face or by inference, to sustain a claim for copyright infringement.

---

[1] Paragraph 34's vague and conclusory allegation that "Natimark's unauthorized reproduction, distribution, and sale of Experian's copyrighted work and the creation, reproduction, distribution and sale of a derivative work constitute copyright infringement" does not even factually follow from Paragraph 26's allegation that Natimark merely copied "data" form the InSource Database.

2

1  *See, e.g., Feist*, 499 U.S. at 348-49, 361; *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th
2  Cir. 1990) ("facts and ideas within a work are not protected"); *Adelman v. Christy*, 90 F.
3  Supp. 2d 1034, 1044 (D. Ariz. 2000) ("The copyright in a factual compilation is thin
4  [and] …. "a subsequent compiler remains free to use the facts contained in another's
5  publication.") (citing *Feist* at 349); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728-29
6  (8th Cir. 2002) ("As applied to a factual compilation, copyright law protects an author's
7  original selection and arrangement of facts, but the facts and ideas within the
8  compilation are free for the taking.") (citing *Feist* at 348-49); *BellSouth Adver. & Publ'g
9  Corp. v. Donnelley Info. Publ'g Inc.,* 999 F.2d 1436, 1446 (11th Cir. 1993) (*en banc*)
10 ("By copying the name, address, telephone number, business type, and unit of
11 advertisement purchased from each listing in the [subject] directory, [the accused
12 infringer] copied no original element of selection, coordination, or arrangement."); *see
13 also* 17 U.S.C.§ 102(b) (copyright protection does not "extend to any idea, procedure,
14 process, system, method of operation, concept, principle, or discovery, regardless of the
15 form in which it is described, explained, illustrated, or embodied in such work").

16 No matter how Experian wishes to re-characterize the Complaint, it does not
17 sufficiently allege that Natimark copied anything other than unprotectable "data" from
18 the InSource Database.[2] Experian's assertion that it alleged Natimark copied "data
19 because, of course, it is not possible to copy the selection, coordination, arrangement,
20 [or] compilation of data without copying data" is a stretch and only begs the question of
21 whether the Complaint does or does not sufficiently allege that Natimark copied
22 copyrightable elements rather than unprotectable data.  Resp. 8:19-21.  Experian's
23 overly simplistic analogy does not help it either. *Id*. at 21-27.

24 In the context of copyright law, it is too simplistic to say only that a "database is
25 comprised of data just as a novel is comprised of words." *Id*.  A factual compilation

---

[2]  Although Natimark disagrees that a mere "swapping out" of the word "data" with "selection, arrangement, coordination, and compilation of data" would result in an adequately pleaded complaint as Experian asserts (as opposed to merely conclusory allegations), this would certainly be preferable to what is actually alleged. Resp. 9:1-6.

3

1 database such as Experian's InSource Database is more like a non-fiction history book
2 on, for example, the Civil War. While the author's particular expression (including her
3 selection, arrangement, coordination, and compilation) of facts about the civil war are
4 protected (along with the particular words she chooses to express those facts), the
5 historical facts themselves, such as names, dates, and battles, are not. Other unprotected
6 elements would include any pre-existing, quoted passages the author might incorporate
7 from prior-existing Civil War books authored by others. To further extend the analogy,
8 it is as if Experian sued Natimark for copyright infringement by alleging only that
9 Natimark copied facts and pre-existing, quoted passages from Experian's Civil War
10 book and incorporated them into its own Civil War book. It would not matter if
11 Experian alleged it spent significant time and resources doing extensive historical
12 research and collecting such facts and passages from pre-existing works to include in its
13 book as the "sweat of the brow" doctrine has no place in copyright law. *Feist*, 499 U.S.
14 at 352-56; *AllChem Performance Prods. v. Aqualine Warehouse LLC*, 2013 U.S. Dist.
15 LEXIS 118812, at *5 (D. Ariz. Aug. 21, 2013) ("[O]riginality, not sweat of the brow, is
16 the touchstone of copyright protection..") If all Experian accused Natimark of copying
17 were these facts and pre-existing quoted passages, there would be no plausible claim for
18 copyright infringement. It is no different with the Complaint. Experian's assertion that
19 Natimark's alleged copying of "data" from the InSource Database "is perfectly
20 consistent with Experian's legal contention that Natimark's copying of data infringes
21 protected elements of the Registration" thus rings hollow. Resp. 8:24-27.

22 Experian's extensive reliance on *Robert Kubicek Architects & Associates, Inc. v.
23 Bosley,* 2009 U.S. Dist. LEXIS 90628, at *2-3 (D. Ariz. Sept. 21, 2009), is also
24 misleading. Resp. 4:22-25, 5-8. *Kubicek Architects* is readily distinguished from this
25 case in that the copyrighted subject matter at issue in that case was "architectural
26 drawings, elevations, and specifications." *Id.* at *4. Although not directly addressed in
27 *Kubicek Architects*, it is implicit that the copyright protection afforded to such subject
28 matter can be presumed as more robust (at least at the pleadings stage) than the "thin"

4

1 copyright protection afforded to factual database compilations such as Experian's
2 InSource Database. *Leicester v. Warner Bros.*, 232 F.3d 1212, 1216-17 (9th Cir. 2000)
3 (explaining that architectural works [*e.g.*, buildings themselves] under 17 U.S.C. §
4 102(a)(8) "are afforded a more limited copyright protection" than "pictorial, graphic,
5 and sculptural works" under § 102(a)(5), which includes "an architect's plans and
6 drawings"); *Windgate Software v. Minnesota Computers*, 504 F. Supp. 2d 582, 584, 588-
7 89 (D. Minn. 2007) (thin copyright protection for factual online databases). In other
8 words, a plaintiff's allegation that an infringer "used, copied, and/or modified significant
9 portions of [the plaintiff's registered architectural drawings, elevations, and
10 specifications] in providing competing architectural services" should be afforded a
11 presumption (at the pleadings stage) that the elements copied were protected whereas in
12 the present case, the "data" itself, <u>*which is all that Experian alleges*</u> Natimark copied,
13 deserves no such presumption of protection under a long line of cases beginning with
14 *Feist*, 499 U.S. at 348-49, 361. *Kubicek, supra*, at *4; Compl. ¶ 26.

15 Finally, Experian's bold assertion that "Natimark knows exactly what it is
16 accused of in the Complaint" based on Natimark having "answered Experian's
17 Complaint, responded to discovery, and propounded 8 sets of its own discovery" is a
18 dangerous invitation.[3] Resp. 4:19-22. Although this Court typically should not consider
19 anything beyond the four corners of the Complaint in a 12(b)(6) or 12(c) motion,
20 Natimark is happy to have this Court, upon request,[4] take judicial notice of the discovery
21 served and responded to thus far. These discovery requests and responses plainly show
22 Natimark's ongoing confusion and its Kafkaesque efforts to try to divine which, if any,

---

[3] Experian has yet to produce a single copy of the purportedly copyrighted database, notwithstanding the fact that it must prove its case of copyright infringement (*Feist*, 499 U.S. at 361; *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006)), and Natimark, unlike an inquisitorial proceeding from a bygone age, does not shoulder the burden of disproving infringement.

[4] This Court may of course consider referenced documents on which the Complaint relies and matters subject to judicial notice. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1 copyrighted elements it is actually accused of infringing in the face of Experian's refusal
2 to produce a full copy of the InSource Database. Neither this Court, nor Natimark,
3 should be forced to speculate as to what copyrighted elements, if any, have been
4 allegedly copied from the InSource Database and by extension, the correct and proper
5 scope of this litigation.

6 **II.    Natimark Is Entitled to Partial Judgment on the Pleadings To Preclude Any**
7 **Claim That Natimark Infringed Unprotectable "Data" or Infringed Any**
8 **Version of the InSource Database Not Covered by the Registration.**

9 Natimark asks this Court, in the event it does not enter judgment on the pleadings
10 as to Experian's entire copyright infringement claim, for partial judgment on the
11 pleadings on two bases. The first basis is to preclude Experian from asserting
12 infringement based on Natimark's alleged copying of "data" from the InSource
13 Database. After acknowledging as "uncontested that facts are not copyrightable,"
14 Experian appears to argue that it is not alleging copyright infringement based on
15 Natimark's alleged copying of "data," despite Compl. ¶ 26 alleging exactly that. Resp.
16 9:16-20. If true, then Experian should amend the Complaint to make this clear.
17 Otherwise, Natimark maintains that its request for partial judgment on this basis is
18 proper.

19 Natimark's second basis for seeking partial judgment is to preclude Experian
20 from expanding any copyright infringement claim, based on the Registration, beyond
21 what the law allows, *i.e.*, its attempt to premise any claim on Natimark's alleged
22 infringement of any version(s) of the InSource Database that existed before July 1, 2011
23 or after Sept. 30, 2011. On this point, Experian either misunderstands Natimark's
24 position or intentionally misrepresents it.

25 Experian grossly mischaracterizes Natimark's argument as claiming that "the
26 Registration can sustain an action for copyright infringement if Natimark copied the
27 database on September 30, 2011, but not if Natimark copied it on October 1, 2011."
28 Resp. 10:4-6. In reality, Natimark argues that because Experian alleged copyright

infringement based only on the Registration, which protects only the versions of the InSource Database as they existed between July 1, 2011 and Sept. 30, 2011, Experian cannot be in this Court asserting copyright infringement for alleged copying of any database versions that lie outside of the Registration's three month coverage period. *See* 17 U.S.C. § 411(a); Mot. (Doc. 46) 11-13 and n.8 (citing authority). In other words, the Registration can sustain an action for copyright infringement only if Natimark copied, <u>*at any time*</u>, any versions of the InSource Database (and only the protected elements within) as they existed between July 1, 2011 and Sept. 30, 2011. For example, if it were found that Natimark copied protected elements (even assuming there are any for the limited purposes here) within the InSource Database as it existed on July 4, 2011, liability could be found based on the Complaint and Registration.  If however, it were found that Natimark copied protected elements within the InSource Database as it existed on July 4, 2010, for example, Experian's only remedy would be to go back to the Copyright Office, as 17 U.S.C. § 411(a) and 37 C.F.R. § 202.3(b)(5) require (*see also* Copyright Office Circular 65, *Copyright Registration for Automated Databases* at 2-4 (June, 2002)), register the version(s) of the InSource Database covering July 4, 2010, and come back to this Court with that registration in order to seek relief.

This is anything but "a purely academic issue". Resp. 10 n.3.[5] The temporal scope of what the Registration entitles Experian to assert materially affects the scope of this entire case, most importantly with respect to discovery. For example, if this Court limits

---

[5] Natimark also rejects Experian's misrepresentation to this Court that Natimark "is stalling on its discovery obligations and is presently refusing to produce a complete version of the accused database." In reality, Experian has refused to agree to Natimark's reasonable request that the parties exchange complete versions of each database simultaneously. This refusal to produce a copy of its database is surprising when it is Experian's burden to prove copyright infringement, not Natimark's burden to disprove infringement of a database it has never seen. *Indyne v. Abacus Techn. Corp.,* 876 F. Supp. 2d 1278, 1285 (M.D. Fla. 2012) (failure to produce for inspection, a copy of the original, registered work justifies directed verdict for defendant) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). Experian's agreement would easily resolve the parties' dispute over this.

7

1  the scope of Experian's copyright infringement claim to alleged copying of versions of
2  the InSource Database within the 3 month coverage period (7/1-9/30/2011), each party's
3  expert(s) will only need to compare Natimark's database with versions of the InSource
4  Database from within that three month period.  If no infringement is found there, this
5  case must end unless Experian wishes to follow the law and first obtain additional
6  registrations covering other time periods before asserting infringement based thereon.

7  Despite Experian's consternations, the case law Natimark cites to in the Motion is
8  fully consistent with its legal arguments. For example, Natimark cited *Metro. Reg'l Info.*
9  *Sys., Inc. v. Am. Home Realty Network, Inc.,* 722 F.3d 591, 597 (4th Cir. 2013) for
10 several general points of law, all of which are correct.  *See* Mot. 11:21-25, 13:12-20, n.8.
11 Experian discusses *Metro. Reg'l* extensively but misses the mark. Resp. 11-13.
12 Natimark has not conflated copyright protection with copyright registration. It merely
13 argues the law, which is that copyrightable elements within the InSource Database may
14 be *protected*, but Experian cannot come to this Court based on alleged copying of
15 *unregistered* versions until and unless it first registers those versions. Moreover,
16 Experian's position in this case is entirely unlike the plaintiff's (MRIS) position in
17 *Metro. Reg'l*, *i.e.*, the photographs at issue in *Metro. Reg'l* were "component works"
18 existing <u>within the registered versions</u> of MRIS' database (which it properly registered
19 quarterly from 2003-2011, 722 F.3d at 592) whereas Experian is essentially claiming
20 that it is afforded automatic registration for unregistered, earlier-in-time versions of the
21 <u>entire InSource Database itself.</u> 722 F.3d at 597, 600. Such claims run counter to
22 established tenets of copyright law. *See, e.g. Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316,
23 1322 (9th Cir. 1986) (rejecting claimant's argument that deposit of 2007/2008 source
24 code was sufficient to satisfy registration requirement for pre-2007/2008 software);
25 *Coles v. Wonder*, 283 F.3d 798, 802 (9th Cir. 2002) (copyright invalid where recording
26 of musical composition deposited with the application for copyright was made 8 years
27 after the original and author did not refer to the original work when producing it).
28

8

1  Experian also makes much of *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, 2008 U.S. Dist. LEXIS 56871, at *84 (D.N.J. July 28, 2008). Resp. 10:11-14. Natimark cited *Mortg. Mkt. Guide* just once in a footnote, solely for the proposition that courts have considered Copyright Office Circulars to be a "fair summary of the law." Mot. 12 n.7. Regardless, *Mortg. Mkt.* is distinguishable and inapposite on several bases. First, the *Mortg. Mkt.* court viewed the copyright at issue in the context of "self-contained pre-existing works" which the Court viewed in light of 37 C.F.R. § 202.3(b)(4)(i)(A). 2008 U.S. Dist. LEXIS 56871, at *86-87; *cf.* 37 C.F.R. § 202.3(b)(4)(i)(A) *with* C.F.R. § 202.3(b)(5) (specifically governing automated databases). Relatedly, the *Mortg. Mkt.* court did not involve a factual database compilation, nor did it address Copyright Office Circular 65 (June 2002).[6] Third, the copyright at issue in *Mortg. Mkt.* was a derivative work, unlike the Registration in this case (an original, group registration). 2008 U.S. Dist. LEXIS 56871, at *88-90; *see* Registration (under "Title of Work").

Experian next contends that "[t]he Registration includes iterations of the database before July 1, 2011" because: (i) it "expressly states that it includes the complete database 'plus' (*i.e.*, in addition to) all updates between 7/1/2011 and 9/30/2011" and (ii) "because Experian is the author of all iterations of the InSource Database," which "acts to register all prior versions of the database" because the Registration is "backward looking." Resp. 12:15-19. Regarding (i), Experian provides no authority for the proposition that pre-July 1, 2011 versions of its entire InSource Database are automatically covered just because the Registration "expressly states that it includes the complete database."[7] Regarding (ii), the cases on which Experian relies do not support

---

[6]  Instructing at 2 that "[i]t is also possible for the first registration to be a group registration for the initial database as first published plus its updates/revisions, *but only if all the material was published within the same 3-month period within the same calendar year*" (emphasis added).

[7]  Unless this Court requests to take judicial notice of it before ruling on Natimark's Motion, Natimark refrains from attaching Experian's answer to Natimark's Interrogatory No. 9, in which Experian states "that the Asserted Copyright covers the InSource database (now known as the ConsumerView database) *from 1998* through Sep. 30, 2011" (emphasis added). This appears to contradict the Registration itself

9

1  its proposition that unregistered, prior versions of its <u>*entire InSource Database*</u> get a free
2  ride into this Court on the back of the Registration simply "because Experian is the
3  author of all iterations of the InSource Database." *Streetwise Maps v. VanDam, Inc.*, 159
4  F.3d 739, 747 (2d Cir. 1998) concerned laminated, paper street maps, not automated
5  databases (which have distinct registration rules as discussed in the Motion and above)
6  and concerned a derivative work registration, not an original, group registration for an
7  automated database. *Id.* at 741, 746-47. The copyrights at issue in *Kay Berry, Inc. v.*
8  *Taylor Gifts, Inc.*, 421 F.3d 199, 205 (3d Cir. 2005) were sculptural works, not an
9  automated database. *Id.* at 202. More importantly, the *Kay Berry* court specifically
10 concluded "that Kay Berry's registration is <u>*not*</u> valid" as a group registration, which is
11 what the Registration claims. Registration (under "Title of Work"); *Id.* at 204. For this
12 same reason, the Registration also cannot be viewed as a "single work" like in *Kay*
13 *Barry*. *Id.* at 204-05. *Mortg. Mkt. Guide* is also distinguishable and inapposite for the
14 reasons discussed above. More applicable cases are those that squarely deal with
15 automated databases such as *Ipreo Holdings, LLC v. Thomson Reuters*, 2011 U.S. Dist.
16 LEXIS 25356, *14-15 (S.D.N.Y. Mar. 7, 2011), which dismissed the plaintiff's
17 copyright infringement claim based on the plaintiff's failure to show "valid copyright
18 registration covering any of" the relevant updates and failure "to plead that Defendants
19 infringed on the content of the database that is registered as opposed to the content that
20 is not." *Id*.

21      Experian's final point regarding the temporal coverage of the Registration makes
22 equally little sense.  Although Experian expressly admits that "[c]hanges and additions
23 to the InSource Database after September 30, 2011, are not *registered* by the
24 Registration," it claims that "[s]o long as the selection, coordination, arrangement, or
25 compilation of the InSource Database remains substantially the same as it was at any
26 point prior to September 30, 2011, the Registration protects the database from copying

27,28 which asserts coverage for the "complete database" with a "Year of Completion" of "2011" and, if accepted as true, would violate 17 U.S.C. § 103(b)'s clear exclusion of "preexisting material employed in the work." (Doc. 1-1).

10

those registered elements." Resp. 13:5-6, 15-18. Given Experian's own argument regarding the inseparability of the selection, coordination, arrangement, and compilation of data from the data itself, along with its allegation that it updates the InSource Database "24 hours a day, 7 days a week to ensure only the most current data is maintained," the selection, coordination, arrangement, or compilation of continually updated data would necessarily be different and additional in post-Sep. 2011 versions of the InSource Database. Resp. at 8; Compl. ¶ 16. Thus, any claim that more recent versions of the InSource Database would remain "substantially the same" as they were "at any point prior to Sep. 30, 2011" makes little sense. This also does little to defeat Natimark's main argument regarding temporal coverage, which is that Experian must obtain registrations from the Copyright Office, as the law requires, before coming to this Court seeking relief for alleged copying of any protected elements within those pre-Jul. 1, 2011 or post-Sep. 2011 versions. There is a reason why the Copyright Office has the requirements which Experian implies can be disregarded. To disregard the established statutory and regulatory framework requiring: (i) submitting deposit materials dated within the period of temporal coverage for which protection is sought and (ii) obtaining a corresponding certificate of registration applicable to the that time period would result in a system "fraught with fraud and deceit." *Tavory v. NTP, Inc.,* 495 F. Supp. 2d 531 (E.D. Va. 2007) (citing *Seiler*, 808 F.2d at 1322).

## III. Conclusion.

For the reasons set forth in Natimark's Motion and herein, the Motion should either be granted in its entirety or this Court should alternatively grant Natimark partial judgment on the pleadings to preclude any claim that Natimark infringed unprotectable "data" or infringed any version of the InSource Database not covered by the registration.

Dated this 7th day of November, 2013.    WEISS & MOY, P.C.

        s/ Michael B. Dvoren
        Michael B. Dvoren (ABN 027386)
        mdvoren@weissiplaw.com
        4204 N. Brown Ave., Scottsdale, AZ 85251
        *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the all CM/ECF registrants of record in this action.

By: s/ Michael B. Dvoren