IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Experian Information Solutions, Inc., | No. CV-13-00618-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| | **(SEALED)** |
| Nationwide Marketing Services, Inc., | |
| Defendant. | |

Before the Court is Defendant Nationwide Marketing Services, Inc.'s Motion for Summary Judgment (Doc. 253). The motion is fully briefed, and for the reasons that follow, will be granted.

**I.   Background**[1]

Plaintiff Experian Information Solutions and Defendant Nationwide Marketing Services, Inc. (doing business under the name "Natimark") are operating entities in the field of consumer information. This dispute centers on the databases owned by the parties and the consumer data contained within.

In 1998, Experian created a consumer information database referred to as the InSource Database ("ISD"), which was later renamed the ConsumerView Database

---

[1] Unless otherwise indicated, the following facts are generally undisputed. To any extent there is ambiguity as to whether a fact has been disputed, the Court has adopted the version offered by Experian, the non-moving party. The Court notes that Experian's responsive filing contains two sets of sequenced facts. Therefore, it cites to Experian's responsive Statement of Controverting Facts (Doc. 261 at 2-18) as "PSCF," Experian's Statement of Additional Facts (Doc. 261 at 19-26) as "PSAF," and Defendant's Statement of Facts (Doc. 254) as "DSOF."

("CVD"). (PSAF ¶ 1.)[2] The ISD "includes demographic, direct marketing response and product ownership information about named individuals." (Doc. 249-1 at 6, DSOF Exh. 8.) It contains in excess of 250 million records and 834 data fields relating to individual consumers (PSCF ¶ 10; PSAF ¶ 2), of which 16 correspond to a consumer's name and address (PSAF ¶ 2). Of the 16 data fields, 11 are address components (zip code, house number, pre-direction, street name, street suffix, etc.) and 5 are name components (first name, middle name, and surname, suffix, and prefix). (DSOF ¶ 2; PSCF ¶ 2.) While "[e]ach individual in the ISD has a separate record" (PSCF ¶ 9), individuals are also "grouped into 'living units' such that up to eight (8) persons living at a specific address are considered part of one household or 'living unit'" (DSOF ¶ 2; PSCF ¶ 2).

On March 26, 2012, Experian obtained a U.S. Copyright certification of registration (No. TX 7-499-062) for the ISD entitled "Group registration for automated database titled: InSource Database; complete database and published updates from 7/1/2011 to 9/30/2011; Representative publication date: 8/24/2011; updated sometimes daily." (Doc. 249-1, DSOF Exh. 8; PSCF ¶¶ 5, 11; PSAF ¶ 18.) The authored work registered consists of "the selection, coordination, arrangement and compilation of data in the database plus all updates and revisions from 7/1/2011 to 9/30/2011," from which "public domain data" is excluded. (Id.)

Sometime in 2011, Natimark acquired a consumer database, the National Consumer List ("NCL") from List Services Direct, Inc. ("LSDI").[3] (DSOF ¶ 6; PSCF ¶ 6; PSAF ¶ 20.) Natimark attempted to sell consumer information from the NCL to Experian through a third-party reseller in April 2012. (PSAF ¶ 21.) As part of this attempted sale, Natimark sent a sample of the database to be tested. Experian alleges that the resulting analysis revealed that the consumer information was "nearly identical" to consumer information which was contained in Experian's ISD. (Doc. 73 at ¶ 46.)

---

[2] In its filings, Experian refers to the database interchangeably as ISD and CVD. That variation is immaterial.

[3] For reasons unknown to this Court, LSDI is not a party to this action.

2

On March 26, 2013, Experian filed a complaint initiating this action (Doc. 1), in which it brought one copyright claim alleging that Natimark had copied consumer data from the ISD without authorization. (Doc. 1.) In turn, Natimark filed its first motion for judgment on the pleadings which was granted by Judge Susan R. Bolton, who was assigned to the case at the time. (Docs. 46, 58.) Judge Bolton found that Experian failed to allege a copyright infringement claim because it alleged that Natimark had copied only non-copyrightable data. (Doc. 58 at 2.) Experian sought leave to file a first amended complaint, which Natimark contested. (Docs. 59, 64.) Following a full round of briefing, Judge Bolton granted the motion in part, finding Experian's amended complaint stated viable copyright infringement and misappropriation of trade secret claims. (Doc. 72.)

Experian filed its First Amended Complaint on March 14, 2014. (Doc. 73), which was then followed by Natimark's second partial motion for judgment on the pleadings (Doc. 109). Experian moved for leave to file a second amended complaint to add additional allegations and defendants. (Docs. 109, 173.) This case was reassigned to this Court, and both motions were denied. (Doc. 195.)

On summary judgment, Experian has modified the scope of its claims. "Experian's copyright infringement claim is premised on 'Natimark's copying, distribution, and sale/licensing… and creation of derivative works from… [t]he selection coordination, arrangement, and compilation of names and addresses existing in the InSource/ConsumerView Database on or before September 20, 2011.'" (PSCF ¶ 3.)[4] "Experian's trade secret misappropriation claim is based only on Natimark's alleged acquisition of: (1) "the names in the [ISD];" (2) "the addresses in the ISD;" and (3) "the coordination of names and addresses in the [ISD]."  (PSCF ¶ 3 (internal brackets

---

[4] In its amended complaint, Experian generally claimed that "Natimark copied the InSource Database, including the selection, coordination, arrangement, and compilation of the consumer information stored in the InSource Database onto its servers in Arizona, without Experian's authorization." (Doc. 73 ¶ 53.)  Experian also claimed that Natimark "induced and/or contributed to the infringement of Experian's copyright to the InSource Database by others." (Doc. 73 at ¶ 56.) Those theories which Experian has failed to raise in opposition to summary judgment are deemed abandoned and dismissed. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 fn. 4 (9th Cir. 2005).

omitted).)

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

The court views the evidence and draws reasonable inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, only disputes over facts that could affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Copyright Infringement Claim

#### 1. Copyright Framework

Under the Copyright Act, 17 U.S.C. § 101 *et seq.*, copyright protection provides an owner with exclusive rights to reproduce copyrighted work, to prepare derivative

4

works from its copyrighted work; to distribute copies of its copyrighted work; and to perform or display its copyrighted work. 17 U.S.C. § 106. A copyright infringement claim requires proof that: (1) the plaintiff is the owner of a valid copyright in the allegedly infringed work; and (2) that the defendant violated at least one exclusive right granted to plaintiff as a copyright holder under 17 U.S.C. § 106. 17 U.S.C. § 501(a); *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001). "Not all copying however, is copyright infringement." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Rather, the plaintiff must prove that the defendant copied one of the constituent elements of the work that are original. *Id.*; *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010).

Copyrightable work is defined as an original work of authorship fixed in a tangible medium of expression. 17 U.S.C. § 102(a); H.R.Rep. No. 1476, 94th Cong., 2d Sess. 51 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5664. The component of originality requires that the work be independently created by the author and that it possess a minimal degree of creativity. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 358, 361 (1991). The component of expression on the other hand requires that the work must also "display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985).

Consistent with these guidelines, the Copyright Act provides that:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). In other words, copyright does not extend to ideas, discoverable facts, or processes – it protects only the expression of original authorship in the work. *See Feist*, 499 U.S. at 347-48 (facts "do not owe their origin to an act of authorship" because they are not "original"; they are "discovered" and "record[ed]"); *CDN Inc. v. Kapes,* 197 F.3d 1256, 1259 (9th Cir. 1999) ("Discoverable facts, like ideas, are not copyrightable.");

*Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509, 512 (2nd Cir. 1991) ("Facts, without more, are not copyrightable."); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("no copyright protection may be afforded to the idea of" producing work); *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC,* 803 F.3d 1032, 1038 (9th Cir. 2015) ("copyright for a work describing how to perform a process does not extend to the process itself").

Where the elements within a work, as compared to the work itself, are a manifestation of creativity and professional judgment, those elements may independently constitute an original work of authorship that is entitled to copyright protection. *CDN Inc. v. Kapes,* 197 F.3d 1256, 1260 (9th Cir. 1999); *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.,* 44 F.3d 61, 67 (2nd Cir. 1994); *Compendium* (Third) § 1117.2.

Alternatively, a combination of unprotectable elements may qualify for copyright protection if the combination of those elements possess the requisite degree of originality. *Satava*, 323 at 811; *Feist*, 499 U.S. at 348. A "compilation" constitutes copyrightable subject matter where it is "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. §§ 101, 103(a). "The copyright in a compilation… extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).

In the context of a database - a digital compilation of data or other digital information and materials – original authorship extends to: (1) "[t]he selection authorship involved in choosing the material or data that is included in the database;" (2) "[t]he coordination authorship involved in classifying, categorizing, ordering, or grouping the material or data;" (3) "[t]he arrangement authorship involved in determining the placement or arrangement of the material or data within the database as a whole;" and (4)

"[t]he authorship involved in creating the material or data that appears within the database." U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, §§ 727.2, 1117.2. (3d ed. 2014).[5]

### 2. Experian's Claim

It is undisputed that the ISD is protected by copyright, and Experian is the copyright owner. *See also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-1076 (9th Cir. 2000) ("the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication") (quoting *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997)); 17 U.S.C. § 410(c). While the parties dispute whether Natimark copied any material from the ISD, they do not dispute *which elements* of the ISD are alleged to have been copied into the NCL. Therefore, on summary judgment, the central question before the Court is whether the data alleged to have been infringed by Natimark is a constituent element of the ISD that is original and entitled to copyright protection. *See Feist,* 499 U.S. at 345; *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("A court must take care to inquire only whether the *protectable elements*" have been infringed) (internal citation marks omitted).

#### (a) Facts

The Court observes as a preliminary matter that despite Experian's contention to the contrary (Doc. 260 at 3), the names and addresses at issue are facts, nothing more. Names and addresses are no different than "census data" or "scientific, historical, biographical, and news of the day," all which are facts that "are part of the public domain available to every person." *Feist*, 499 U.S. at 347. [6] Even assuming Experian was the first

---

[5] When interpreting the Copyright Act, the Court defers to the Copyright Office's interpretations, such as the Compendium, in the appropriate circumstances. *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 684 (9th Cir. 2014).

[6] Both parties having addressed the Supreme Court's formative case on factual compilations in *Fiest* in significant detail, the Court assumes their familiarity with the case and need not re-summarize it here.

to find and report them, it did not create the names and addresses, it merely "discovered [their] existence." *Id.* "[T]hey existed before [Experian acquired] them and would have continued to exist if [Experian] had never" included them in the ISD. *Feist*, 499 U.S. at 361.

Experian argues that because consumer information compilers dispute "the best names and addresses of consumers," names and addresses are not "indisputably true." (Doc. 260 at 3.) This argument is unavailing. Names and addresses are fundamentally factual irrespective of their "deliverability." *Cf. BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 304 (S.D.N.Y. 2013) ("very often, data fails to be perfectly representative or entirely complete relative to what it is supposed to measure, but the data nevertheless remains fundamentally factual.") (citing *Feist*, 499 U.S. at 344). Experian also disputes whether "the names and addresses… contained in the Experian ISD are, or have ever been, in the public domain" (PSCF ¶ 18), and attempts to recharacterize the names and addresses by contending they derive from a mix public, private, and propriety sources. Even if interpreting this argument to say that some of the names and addresses are *not* discoverable, and therefore are not "facts," it does not give rise to a triable issue. Experian does not point to any one example of a name or address at issue in this case that is not available in or excluded from the public domain. Rather, the evidence supports the contrary. (*See* Doc. 249-1 at 6, DSOF Exh. 8 (the copyright registration descriptive statement reads the "Categories of data include: Name [and] Address/Location" and that the "Origin of data" is "Public sources").

Therefore, absent something more, the names and addresses are uncopyrightable facts. *See e.g., Golan v. Gonzales,* 501 F.3d 1179, 1189 (10th Cir.2007) ("no individual may copyright a work in the public domain"); *Schroeder v. William Morrow & Co.,* 566 F.2d 3, 5 (7th Cir. 1977) ("individual names and addresses are in the public domain and not copyrightable"); *Northwestern Bell Tel. Co. v. Bedco of Minnesota, Inc.*, 501 F. Supp. 299, 302 (D. Minn. 1980) ("The copyright does not, of course, extend to information listed in the directory that is in the public domain such as names and addresses. There is

nothing that would prevent a subsequent compiler from collecting this information by independent research, or even from using the copyrighted directory to ascertain the names of prospective advertisers."); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F. Supp. 900, 906 (D. Ark. 1974) ("plaintiff's copyright does not extend to the individual names and addresses listed in its directory... There is nothing to stop another compiler obtaining this information, which is in the public domain, by independent research."); *CDN Inc. v. Kapes,* 197 F.3d 1256, 1259 (9th Cir. 1999) ("Discoverable facts, like ideas, are not copyrightable."); *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509, 512 (2nd Cir. 1991) ("[f]acts, without more, are not copyrightable.").

Turning to the question of whether there is "something more," Experian argues that the names and addresses are not facts, they are opinions which reflect creativity. "The names and addresses in the CVD are not the result of rote reproduction, they are the result of authorship: careful selection, rejection, curation, and myriad other creative decisions made by Experian's employees. Experian's subjective determinations and original algorithms breathe creativity and significant value into the unique set of identities in the CVD." (Doc. 260 at 3.) "When Experian's employees determine what data is appropriate to include in the CVD (as opposed to rote inclusion of all data, irrespective of credibility), they impart judgment and the necessary creativity to warrant copyright protection." (Doc. 260 at 7.)

In addition to several other cases, Experian cites to *CDN* for the proposition that the names and addresses "are not facts, they are "wholly the product of… creativity." 197 F.3d at 1260. The cases cited offer no basis to classify the names and addresses at issue as an expression of original authorship. In *CDN*, the Ninth Circuit found that individual prices listed in a price guide for collectible coins qualified as original work of authorship because they were not "mere listings of actual prices paid" for the coins, which would not have been copyrightable, but instead, were a "best estimate of the fair value" of the coins. The names and addresses here, by comparison, are not original to Experian. *Satava*, 323

F.3d at 810 ("Any copyrighted expression must be 'original.'"). Experian did not create the names and addresses; it discovered them and inserted them into the ISD. Nor did Experian modify the names and addresses with any distinguishable variation of originality such that they are protectable as an expression of discovered fact, idea, or process. The names and addresses remain facts. Although it has been abandoned on summary judgment,[7] Experian's prior allegation is notable by distinction. Experian alleged in the amended complaint that it:

> creates and includes in the InSource Database original information that is specific to individual consumers. The original information relates to consumer behavior that Experian derives from inferences, conclusions, and business judgments based on the consumer information it collects and compiles. Examples of such consumer behavior include predictors concerning the likelihood a consumer will relocate within a particular period of time and whether children are present in a household.

(Doc. 195 at 10, quoting Doc. 73 at ¶ 18.) In the Court's prior order it found that, unlike the public domain data at issue in *Feist*, the authorship alleged in the consumer *behavior* information was sufficiently original that could plausibly fall within the scope of its copyright. While original consumer behavior information composed by Experian would likely be entitled to copyright protection, the names and addresses at issue here on summary judgment are not.

### (b) Compilation

Experian does not claim that compiled names and addresses form a compilation independent of the ISD. Therefore, in order to demonstrate that Natimark copied a protectable element of its compilation, Experian must show that the ISD features an original selection arrangement, and coordination of the names and addresses alleged to have been copied. *See Bikran's Yoga,* 803 F.3d at 1041. Experian however fails to do so.

---

[7] On summary judgment Experian avers that "any facts involving data fields other than name and address, such as… 'whether a consumer is married, smokes, has children how much a consumer earns, etc.' are wholly irrelevant to Experian's claims." (PSCF ¶ 3.)

Experian's copyright mantra in the "selection, arrangement, coordination, and compilation of the names and addresses" in the ISD is rendered superfluous by its contention that all the factors which might support that theory are irrelevant. "Experian's claims in this case relate to the content of the data fields, not the existence of the fields themselves." (PSCF ¶ 16.) It states that "[t]he arrangement of fields within a database is irrelevant to Experian's claims" (PSCF ¶ 6); "[t]he location of the data fields in the respective databases is easily manipulated and immaterial to Experian's claims" (PSCF ¶ 6); "it is irrelevant whether other databases contain the same fields as that fact is not relevant to whether the content of the fields is the same" (PSCF ¶ 16); and whether other elements "aside from the alleged overlapping names and addresses" have been copied is "not relevant… because Experian does not allege that those elements are copied" (DSOF ¶ 26; PSCF ¶ 26). Thus, despite its attempts to mask it, it is apparent that Experian simply claims copyright in the "complied names and addresses" – not in the compilation of those names and addresses.

Experian does not point to any arrangement of names and addresses within the ISD that could be characterized as an original expression of creativity. It does not claim that the names and addresses collectively appear in any specific order. The specific name and address data in the ISD follow the standard format provided by the postal service. This arrangement cannot be said to be anything more than "mechanical" or "routine." *See Feist,* 499 U.S. at 362. This aside, Experian does not contend that Natimark copied the names and addresses as they were arranged in the ISD, and instead, as noted above, contends that the arrangement of data is not relevant to its claim.

Experian does not offer specific facts that show the coordination of the names and addresses in the ISD are original. While Experian maintains that Natimark "incorrectly conflates name and address data with *coordination* of complied names and addresses" (PSCF ¶ 32), ironically, it does not explain how the names and address are "coordinated." Experian states that the ISD, like the NCL, has national consumer files "that can be used for the purpose of direct mail marketing." (PSCF ¶ 29.) Pointing to the

11

accuracy or "deliverability" of information, Experian appears to identify its copyrightable "coordination" is expressed in the ISD as "name and address pairings (i.e., the content of the data fields and the subject matter of this case)." (PSCF ¶ 18; PSAF ¶ 9.) But that only brings the Court to another impasse. Experian does not define what the coordinated "pairing" is. Is the pairing comprised of one name and one current mailing address? Is the pairing the "living unit" comprised of one address and perhaps multiple names? In any event, these questions need not be answered; Experian does not specifically claim that any coordinated pairing has been copied. Rather, *as evidence of copying*, Experian proffers just the opposite. It highlights that in the NCL, certain names are in duplicate, paired with both the individual's old address as well as with their new address. In the ISD, both addresses exist, but the individual is paired with the new address, and the old address is separated into a related category. (Doc. 260 at 13; PSAF ¶ 23.) Nevertheless, because Experian contends that location of the data fields is immaterial to Experian's claim, the coordination of any name with an address is inherently not at issue.

Experian has not made a sufficient showing that the selection of names and addresses in the ISD feature the requisite degree of originality. The Court emphasizes that whether a selection in a factual compilation possesses the modicum of creativity needed to be original, it does not look to the actions of the compiler selecting the facts – it looks to the *selection* of facts within the compilation. Like the name, town and telephone number included in the telephone directory in *Feist*, the names and addresses here, without more, do not rise above anything other than "typical" and "garden-variety." *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 674, 684 (2nd Cir. 1998). *Cf. Eckes v. Card Prices*, 736 F.2d 859, 862-863 (2d Cir. 1984) (finding price directory for baseball cards was copyrightable as a compilation based on the originality featured in the selection of "premium" cards listed); *Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) (finding originality featured in the selection of phone-book classifications of particular interest to Chinese–Americans). In fact, because the names and addresses are to be considered without regard to their

location in the ISD or how they are arranged, the Court strains to find that the names and addresses qualify as a selection for purposes of a compilation; the facts are not collectively selected and displayed in any manner such that they "may be used effectively by readers." *Feist*, 499 U.S. at 348.

Experian argues that it "rigorously investigates each potential source to determine, among other things, whether the source's data is current, is reliable, and adds value to the ConsumerView Database. Experian employees use proprietary testing methods and cumulative decades of industry experience to select which sources, and which data within each source, should be incorporated into the ConsumerView Database. No data is ever added to the ConsumerView Database without the approval of Experian's employees based on their experienced business judgment." (PSAF ¶ 5.) This, however, does not create a triable issue of originality in a compilation. The sheer multiplicity of names and addresses do not entitle them to copyright protection. Copyright protection inheres in the creative original *selection* of facts displayed, not in the means used to discover those facts. *See BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 306 (S.D.N.Y. 2013). As observed by Natimark, this "sweat of the brow" theory has been a rejected basis for copyright protection of a factual compilation. The authorship in a factual compilation "is properly viewed as resting on the originality of the selection and arrangement of the factual material, rather than on the industriousness of the efforts to develop the information." *Feist*, 499 U.S. at 360.

Experian also argues that the originality of selection is displayed in the deliverability of the names and addresses. This is equally unavailing. Nothing about how the selected facts are featured in the ISD reflect their level of accuracy. *See Bikram's Yoga*, 803 F.3d at 1042 ("the composition renders it more effective as a process or system, but not any more suitable for copyright protection as an original work of authorship.").

In summary, the names and addresses are uncopyrightable fact, and the use of that data alone does not constitute infringement. Even if assuming Natimark copied the

compiled names and addresses from the ISD, Experian has failed to show there is a genuine dispute that Natimark copied an original element of Experian's copyrighted work. Therefore, Experian's copyright infringement claim fails as a matter of law, and Natimark is entitled to summary judgment.

### B. Misappropriation of Trade Secret Claim

Arizona has codified the basic principles of common law trade-secret protection by adopting the Uniform Trade Secrets Act ("UFTA"), Ariz. Rev. Stat. § 44-401 *et seq.*, and in the absence of controlling authority, recognizes the Restatement of Torts. *Enter. Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1068 (Ariz. Ct. App. 1999); 1990 Ariz. Sess. Laws, ch. 37, §§ 1, 2 (2nd Reg. Sess.). A claim for misappropriation of a trade secret requires proof that: (1) the subject matter of plaintiff's information qualifies as a legally protectable trade secret; (2) the trade secret was misappropriated by the defendant; and (3) the plaintiff suffered damages approximately caused by the misappropriation. A.R.S. § 44-403(A) *Calisi v. Unified Financial Services, LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013). A "trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ariz. Rev. Stat. § 44-401(4).[8] Misappropriation of that trade secret occurs where the trade

---

[8] Under the Restatement, to determine if a trade secret exists, the Court looks to:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

14

secret of another is acquired "by a person who knows or has reason to know that the trade secret was acquired by improper means," Ariz. Rev. Stat. § 44-401(2)(a), such as by "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage," § 44-401(1).

First, as a matter of law, Experian cannot show that it has a legally protectable trade secret in the individual names or addresses of consumers because it does not show that it is the owner of that information. *See Enterprise Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1068, (Ariz. Ct. App. 1999) ("Trade-secret law… provides protection to the *owner* of a trade secret." (emphasis added)); *Calisi v. Unified Financial Services, LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013). Rather, as observed by Natimark, the individual names and addresses are matters of public knowledge and fall within the public domain. *See* Restatement (First) of Torts § 757 (1939) ("Matters of public knowledge… cannot be appropriated by one as his secret"); *Ehmke*, 3 P.3d at 1069 ("matters that are public knowledge are not safeguarded as trade secrets."); *Master Records, Inc. v. Backman*, 652 P.2d 1017, 1022 (Ariz. 1982) (sales contract was not a trade secret where "it contained no concepts or ideas which are not in the public domain.").

Further, while Experian does not have the burden to prove that no other individual possesses the information claimed to be secret, Experian nonetheless carries the burden to show on summary judgment the existence of information that is a trade *secret*. *See MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993); *W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, 872 F.Supp.2d 883, 899 (D. Ariz. 2012) ("When a party fails to identify its trade secrets with particularity, summary judgment is appropriate.") (citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1166 (9th Cir. 1998)). Absent some specific claim or evidence that some or all of the *names and addresses* at issue are confidential and unavailable to the public, the Court is not persuaded to deviate from the logical presumption that names and addresses of

---

*Enterprise Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1069 fn. 6 (Ariz. Ct. App. 1999) (citing Restatement (First) of Torts § 757 (1939)).

consumers at large fall within the sphere of information that can be obtained from publicly available sources, such as public directories and property records. *See Ehmke*, 3 P.3d at 1069, (Ariz. Ct. App. 1999) ("Information is considered public knowledge if it is available in trade journals, reference books or published materials..."). It makes little difference whether Experian or its third party data supplier obtained the information; as discussed above, there is no evidence that the names and addresses were gleaned from any source other than a public record. Experian's ambiguous and circular reference to "proprietary" and "private sources" is insufficient to create a genuine dispute of material fact.

Experian also does not create a triable issue as to whether it has a legally protectable trade secret in the *compiled* names and addresses. Unlike the cases cited by Experian which involve customer lists, no protectable trade secret is alleged to exist in the names and addresses as a collective group. *See Ehmke*, 3 P.3d at 1069 (a compilation of public components is protectable if "the end-product qualifies as a trade secret"). Rather, the trade secret claimed by Experian in the "complied names and addresses" refers to the accurate pairing of an individual name with its corresponding address.

Further, Experian does not contend that in acquiring this data from the ISD, Natimark misappropriated methods, strategies, or any specialized information about consumers outside of their names and addresses. *Cf. Calisi v. Unified Financial Services, LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013) ("A customer list may be entitled to trade secret protection when it represents a selective accumulation of detailed, valuable information about customers—such as their particular needs, preferences, or characteristics—that naturally 'would not occur to persons in the trade or business.'"). To be clear, on summary judgment, there is no claim that any subject matter or characteristic is imputed to the acquired names and addresses, individually or collectively, such that those names and addresses are representative of something more. Rather, the names and addresses at issue are claimed to be proprietary without regard to who the names and addresses correspond to or how those names and addresses were utilized following their

acquisition.

Experian does not explain how the names and addresses are valuable due to their secrecy, nor does it set forth how this data alone provides them with a "demonstrable competitive advantage." *See Calisi,* 302 P.3d at 632 ("A related factor is whether the information contained in the customer list derives independent economic value from its secrecy, and gives the holding of the list a demonstrable competitive advance over others in the industry."). Experian simply maintains that, as a general matter, "[n]ames and address are the most valuable and important data fields in all national consumer databases," (PSAF ¶ 17), and Experian views its high deliverability rate as one of the most valuable aspects of the ConsumerView Database" (PSAF ¶ 19). This is wholly insufficient to create a triable issue of fact.

Experian indisputably expends considerable time, effort, and money in the acquisition, processing, and verification of its data. (*See* PSAF ¶¶ 4-8.) *See Calisi,* 302 P.3d at 632 ("A customer list may also be entitled to trade secret protection if the claimant demonstrates it compiled the list by expending substantial efforts to identify and cultivate its customer base such that it would be difficult for a competitor to acquire or duplicate the same information."). But again, to be protected as trade secret, the information "must be 'more than a listing of… individuals which could be compiled from directories or other generally available sources.'" *Id.* (quoting *Brown v. Rollet Bros. Trucking Co., Inc.*, 291 S.W.3d 766, 777 (Mo. Ct. App. 2009)). The sheer accuracy of those names and addresses do not make that information so "sufficiently novel such that it is not readily ascertainable to the competitors in an industry." *Ehmke*, 3 P.3d at 1069. Experian does not claim that knowledge of those names and addresses are only available as a result of Experian's compilation of that information and could not be acquired by a competitor.[9] *Cf. Prudential Ins. Co. of America v. Pochiro*, 736 P.2d 1180, 1183 (Ariz.

---

[9] Experian claims that there were 16 name and address records that were found present in both the ISD and NCL. Because Experian obtained these records through an exclusive arrangement it had with a data supplier, it maintains that "this information is exclusive to Experian, no other company *should* have the same information." (PSAF ¶ 22 (emphasis added).) Because this statement is speculative and unsupported only by

Ct. App. 1987) ("The evidence produced by Prudential with regard to the information that appears on OPSRs and DOPSRs requires the conclusion that at least a portion of the information was available nowhere else except through contact with an individual policyholder.").

Even if assuming the accuracy of the names and addresses make them novel or the information could not be easily acquired by others, Experian has not set forth any facts which show how a competitor that obtains this data would gain a demonstrable competitive advantage over others in the industry. No evidence or argument has been offered that might possibly suggest that the names and addresses themselves reveal that they are accurate or the propriety manner by which they were acquired. *See Phoenix Newspapers, Inc. v. Keegan*, 35 P.3d 105, 113 (Ariz. Ct. App. 2001) ("A competitor would have to see the technical manual, setting forth all of the research associated with the test, before it would gain any meaningful information for competitive test-building purposes; thus, merely seeing the specific items would not disclose the trade secret"); *cf. Ehmke*, 3 P.3d at 1070 ("Taken out of context, the information in the Worksheet may… appear to consist only of the general knowledge of those persons in the car-rental industry. However, the Worksheet as a whole is an original product containing an arrangement of factors that provides Enterprise with a competitive advantage."). While Experian may summarily claim that "Natimark has received, has marketed, and has profited from use of the name and address data of the NCL…copied from the ISD" (PSCF ¶ 23), mere use of the data falls short of showing that Natimark gained some competitive advantage by virtue of the trade secret – the "deliverability" of those names and addresses.

Lastly, assuming LSDI obtained the data from Experian, no set of facts have been put forth that show Natimark misappropriated Experian's trade secret. Experian concedes

---

inference, not by evidence, it is not entitled to an assumption of truth. While Experian may have an exclusive arrangement with its data supplier, nothing suggests that the names and addresses are not available from other generally available sources and could be compiled by someone else within the industry.

that Natimark did not know the data was improperly acquired from Experian at the time it was obtained from LSDI. Further, Experian fails to show there is a triable dispute as to whether Natimark had reason to know that the data was not obtained through proper means.

First, Experian points to the manner by which Natimark received its data from LSDI as indicia of improper motive, in that it purchases data from LSDI, rather than licenses the data, and does so only by invoice and not by written agreement. (PSAF ¶ 27.) Experian contends this practice "is highly unusual in the consumer database industry." (PSCF ¶ 18.) This is insufficient to create a triable issue of fact. Experian provides no evidentiary support for this conclusory opinion, and it is undermined at least in part by its very own practices. Experian states that it acquires data "from other data companies who have collected the information, such as ALC, the Experian reseller that attempted to broker the data that prompted the lawsuit." (PSAF ¶ 3.) Second, Experian points to Natimark's knowledge that the data received from LSDI came from Acxiom and that it replaced the Acxiom field names with its own. (PSAF ¶ 30.) This is also insufficient to create a triable issue of fact; it does not show what Natimark knew or should have known *when it acquired* the NCL. Instead, the evidence offered by Experian only shows that Natimark reviewed the NCL during the course of litigation at which time it observed the field names referenced in NCL that led it to believe that the source of the data obtained from LSDI was Acxiom, not Experian.

Finding Experian has failed to show there is a genuine dispute for trial, Natimark is entitled to summary judgment on Experian's claim for misappropriation of a trade secret. Accordingly,

**IT IS ORDERED:**

1. That Defendant's Motion for Summary Judgment (Doc. 253) is **granted**;

2. That Defendant's Motion for Reconsideration (Doc. 264) is **denied as moot**;

3. That the Court will direct that this Order be **unsealed** on **October 10, 2016**, unless the parties show cause in writing as to why it should remain sealed; and

4. That the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 30th day of September, 2016.

Honorable Steven P. Logan
United States District Judge

cc: All Counsel